O

# United States District Court
# Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of CLEAVER-BROOKS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SOUTH COAST MECHANICAL, INC., et al., <br><br> Defendants. <br><br> AND RELATED CROSS-ACTIONS. | Case № 2:18-cv-09733-ODW (RAOx) <br><br> **ORDER DENYING MOTION FOR SUMMARY JUDGMENT [57]** |

## I.     INTRODUCTION

Before the Court is Defendant, Use Cross-Claimant, and Cross-Defendant South Coast Mechanical, Inc.'s ("SCM") Motion for Summary Judgment and Alternatively Partial Summary Judgment ("Motion"). SCM seeks summary judgment in its favor on (a) SCM's cross-claims against Defendants, Use Cross-Claimants, and Cross-Defendants BVB Construction, Inc. ("BVB") and Hanover Insurance Company ("Hanover"), and (b) BVB and Hanover's cross-claims against SCM. (SCM's Mem. of P. & A. in Supp. of Mot. for Summ. J. ("Mot.") 1, 18, ECF No. 57-1.) In the alternative, SCM seeks (a) partial summary judgment in its favor in the form of an

adjudication establishing BVB and Hanover's duty to pay, and (b) dismissal of BVB and Hanover's cross-claims against SCM. (*Id.*) For the following reasons, the Court **DENIES** the Motion.[1]

## II. BACKGROUND[2]

On or about June 14, 2016, the United States Department of Veteran Affairs ("VA") and BVB entered into a written contract ("Prime Contract") for improvements to replace boilers in one of the VA's buildings at the Greater Los Angeles Healthcare System (the "Project"). (SCM's Separate Statement of Uncontroverted Facts ("SUF") 1, ECF No. 57-7.) BVB, as principal, and Hanover, as surety, executed and delivered a Miller Act payment bond for the Project to the United States. (SUF 2.) BVB hired SCM as subcontractor, specifically to purchase and install three boilers. (SUF 3, 6.)

Thus, BVB and SCM entered into a written subcontract agreement. (SCM's App. of Exs. in Supp. of Mot., Ex. 3 ("Subcontract"), ECF No. 57-4.) In relevant part, the Subcontract provides:

> In the event of elimination or reduction of the Work to be performed under this [Subcontract] by reason of termination or modification of the [Subcontract] or [Prime Contract] or by default by the [VA], [SCM] shall in no case be entitled to recover from [BVB] more than any sum equal to the percentage of Work completed by [SCM] and approved by [BVB] and/or [the VA] that is properly invoiced at the time of termination or modification of the [Subcontract]. [SCM] may not be entitled to the full sum commensurate with the percentage of Work completed.

(Subcontract § 31(A).) The Subcontract also states, "Payment will reflect the percentage of the work completed by [SCM] for the payment period as determined by

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[2] Both parties submitted objections to evidence. Some of the evidence to which the parties object is unnecessary to the resolution of the Motion, and other such evidence supports facts not in dispute. The Court need not resolve those objections at this time. To the extent the Court relies on objected-to evidence in this Order, the objections thereto are **OVERRULED**. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) ("[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself.").

[BVB] and/or [the VA]." (*Id.* § 23(A).) Under the Subcontract, if the VA separately estimates the amount of work done by SCM, then the VA's estimates "shall be final and binding upon the parties and shall conclusively establish the amount of work done by [SCM] for which payment is to be made." (*Id.*)

On July 3, 2018, the VA suspended the Project. (SUF 19.) On August 20, 2018, the VA terminated the Prime Contract for convenience. (SUF 21.) And on August 30, 2018, BVB notified SCM of the VA's termination of the Prime Contract. (SUF 22.)

At issue are four monthly payment applications SCM submitted to BVB with a total billed sum of $1,902,592.30. (SUF 26–30.) BVB submitted its own payment applications to the VA that incorporated SCM's billed work. (BVB & Hanover's Resp. to SCM's Separate Statement of Unconverted Facts ("RSUF") 39–41, ECF No. 58-2.) The VA disputed billed items in BVB's applications concerning SCM's work and rendered estimated completion percentages lower than SCM's estimates as billed to BVB. (RSUF 43–46, 59–61.) In March 2020, BVB paid SCM $190,898.96, the value of SCM's work based on the VA's estimated completion percentages. (SUF 34; RSUF 53.)

Whether BVB and Hanover owe the unpaid balance of SCM's billings to BVB (plus interest) is in dispute. SCM sues for (1) recovery on the Miller Act payment bond against BVB and Hanover and (2) breach of the Subcontract against BVB. (Ans. & Cross-Claim of SCM, Cross-Claim ¶¶ 6–18, ECF No. 17.) BVB and Hanover sue SCM for (1) negligence and (2) breach of the Subcontract. (Ans. & Cross-Claim of BVB & Hanover, Cross-Claim ¶¶ 5–16, ECF No. 37.)[3]

### III.     LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[3] The claims of Use Plaintiff Cleaver-Brooks, Inc.—SCM's sub-subcontractor—seeking payment for the materials it manufactured for the Project, are not relevant to this Motion. (*See generally* Compl., ECF No. 1)

matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Celotex*, 477 U.S. at 322–23. Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to the case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a

genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3.

## IV. DISCUSSION

The Court considers SCM's requests for summary judgment as to the parties' claims, in turn.

### A. SCM's Breach of Contract Claim

First, the Court addresses SCM's contract claim against BVB. To establish a claim for breach of contract, a plaintiff must prove "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

SCM argues that BVB breached the Subcontract by failing to pay in full the amounts billed in its payment applications. (Mot. 8.) The only section of the Subcontract that SCM identifies as breached is the termination provision in section 31(A). (*Id.* at 6.) Under SCM's interpretation, section 31(A) requires that SCM "be paid all amounts properly invoiced at the time of termination." (*Id.* (emphasis removed).)

SCM's interpretation of section 31(A) is untenable. "Under California law, the interpretation of contract language is a question of law." *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925–26 (9th Cir. 2003). Section 31(A) provides that, upon termination of the Prime Contract, SCM "*shall in no case be entitled to recover* from [BVB] *more than* any sum equal to the percentage of Work completed by [SCM]." (Subcontract § 31(A) (emphasis added).) The provision further states that SCM "*may not* be entitled to the full sum commensurate with the percentage of Work completed." (*Id.* (emphasis added).) In its own plain terms, the provision does not impose an

obligation on BVB; it merely establishes a ceiling to SCM's recovery from BVB in the event that the VA terminates the Prime Contract. This section does not set forth terms by which payment to SCM may be calculated upon termination of the Prime Contract, nor does it affirmatively oblige BVB to pay anything.

Significantly, SCM rests its theory of breach exclusively on this provision. (Reply Mem. of P. & A. in Supp. of Mot. ("Reply") 1, ECF No. 59 (arguing section 31(A) is the "only provision applicable to the facts at hand"); *id.* at 7 ("Here, the applicable subcontract provision is 31A . . . .").) On this Motion, SCM fails to identify an obligation BVB possibly could have breached. This alone is a sufficient basis upon which to deny summary judgment on this claim. *See Am. Gen. Life & Accident Ins. Co. v. Findley*, No. CV 12-01753 MMM (PSWx), 2013 WL 1120662, at *11–12 (C.D. Cal. Mar. 15, 2013) (denying summary judgment where movant failed to identify a contract term defendant breached).

Additionally, BVB and Hanover advance a theory that section 23(A) of the Subcontract governs, at least in part, BVB's payment obligation under the Subcontract. (Opp'n to Mot. 2, ECF No. 58.) Assuming *arguendo* that section 23(A) provides the obligation necessary to support SCM's claim of breach, there is a genuine dispute of material fact as to the amount of the obligation, which must "reflect the percentage of the work completed by [SCM] . . . as determined by [BVB] and/or [the VA]." (Subcontract § 23(A).) BVB and Hanover provide evidence that the VA determined the percentage of work completed for certain items was lower than what SCM billed, and that BVB paid SCM according to the VA's determination. (RSUF 44, 46, 53; BVB & Hanover's App. of Exs. in Supp. of Opp'n, Ex. 31 (VA contracting officer's final decision on BVB's claim for invoiced costs), ECF No. 58-4.) Under section 23(A), a determination by the VA controls. (Subcontract § 23(A).) Although SCM argues BVB approved SCM's estimates by incorporating them in BVB's invoices to the VA (Reply 9–10), there is at least a triable issue of fact as to the measure of BVB's payment obligation and, consequently, whether BVB

1  breached said obligation by paying SCM consistent with the VA's estimates. Thus, the
2  Motion is **DENIED** as to SCM's breach of contract claim.

3  B.     **SCM's Miller Act Claim**

4  Next, the Court turns to SCM's Miller Act claim. The Miller Act provides a
5  right to bring a civil action for "[e]very person that has furnished labor or material in
6  carrying out work provided for in a contract for which a payment bond is furnished
7  under [the Miller Act] and that has not been paid in full within 90 days." 40 U.S.C.
8  § 3133(b)(1). The measure of recovery under the Miller Act is the amount due under
9  the bonded subcontract. *Taylor Constr. Inc. v. ABT Serv. Corp.*, 163 F.3d 1119, 1122–
10 23 (9th Cir. 1998). Here, while SCM argues it has not been paid in full, it rests its
11 argument on BVB's purported breach of the Subcontract. (Mot. 13–14.) As discussed
12 above, there is a genuine dispute as to the existence and amount of BVB's outstanding
13 payment obligation under the Subcontract. Summary judgment as to SCM's Miller
14 Act claim is inappropriate. Thus, the Motion is **DENIED** as to SCM's Miller Act
15 claim.

16 C.     **BVB and Hanover's Claims**

17 Finally, SCM requests summary judgment against BVB and Hanover on their
18 negligence and breach of contract claims. (Mot. 1, 18.) SCM argues that BVB and
19 Hanover's claims are barred as a matter of law because the VA terminated the Project
20 for convenience. (*Id.* at 9–13.) However, SCM cites no authority construing
21 California law, which governs here. Moreover, the nonbinding authorities upon which
22 SCM relies involved cases in which courts interpreted contractual provisions to reach
23 their conclusions. *See, e.g.*, *Shelter Prods., Inc. v. Steelwood Constr., Inc.*, 307 P.3d
24 449, 459–61 (Or. Ct. App. 2013) (examining contract to determine party could not
25 offset amount owed for deficient work where contract was terminated for
26 convenience). Here, the termination provision upon which SCM relies does not by
27 itself limit BVB and Hanover from prosecuting their claims (*see* Subcontract
28 § 31(A)), and SCM fails to explain how the provision in the context of the

Subcontract's other terms might preclude them from doing so. On this briefing, summary judgment is not appropriate,[4] and SCM's Motion is therefore **DENIED** as to BVB and Hanover's claims.

## V. CONCLUSION

For all the aforementioned reasons, SCM's Motion for Summary Judgment is **DENIED**. (ECF No. 57.)

**IT IS SO ORDERED.**

October 7, 2020

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

---

[4] In a single sentence in a footnote, SCM asserts that Hanover lacks standing. (Mot. 4 n.1.) As SCM presents no authorities or evidence to support this cursory argument, the Court declines to consider it.